SMITH v. SHELTON et al.

[95 South. 835.   No. 22124.]

APPEAL AND ERROR.   *Judgment not reversed for erroneous instruction
unless it affirmatively appears that complaining party prejudiced.*
A judgment will not be reversed because of the granting of an
erroneous instruction to the jury unless it affirmatively appears
from the record that the party complaining thereat was preju-
diced·thereby.   Rule 11 (101 Miss. 906, 59 South. ix).

APPEAL from circuit court of Warren county.
HON. E. L. BRIEN, Judge.

Action by J. R. Smith against Eugene Shelton and others.
Judgment for the latter, and the former appeals.   On sug-
gestion of error.   Overruled.

*Brunini & Hirsch,* for appellants.

As heretofore stated there is a sharp conflict in the tes-
timony between the appellants and appellees in reference
to whether there was a contract of employment.  The ap-
pellees contending that there was not and the appellants
·that there was.  In such cases it becomes peculiarly neces-
sary to expound in the instructions the law with the utmost
caution, clearness and precision.   This court in the case of
*Norfleet* v. *Sigman,* 41 Miss. 631, says:

"There is but little if any testimony bearing on this
point outside of that given by the plaintiff and defendant
and the question really resolved itself into one of credi-
bility between the parties, of which the jury were the ex-
clusive judges, under the rules of law given them by the
court.

"In that class of cases where the testimony approximates
an equipoise, and where it is conflicting in its character,
we think all courts should expound the rules of law ap-
plicable to them with the utmost caution, clearness, and

precision avoiding as far as possible any and all allusions whatever to matters not involved in the issue.

"Any departure from the strict letter of the law, or any failure to hold the scales of justice evenly balanced between the parties, either through design, mistake, or misapprehension of the rules of law; or giving instructions which are irrelevant or inapplicable to the questions in issue, where such instructions have a tendency to and may mislead the jury, will be fatal to any verdict which may be rendered."

Not only in such close cases should it be considered that the jury may have been influenced by the erroneous instructions but it must be presumed to have had an effect. On this point this honorable court in the case of *Norfleet* v. *Sigman, supra,* said: "In the case of *Harper et al.* v. *Tapley and Wife,* 35 Miss. 512, the court says: 'The case manifestly depends on questions of controverted fact. . . .' "

"We cannot know how the jury regarded these questions, and what would have been their verdict upon them. Hence when erroneous instructions are given in such a case, it is fair to infer they had their effect upon their minds, and were conducive to the verdict which they found.

"And it is undoubtedly a correct rule that if, in a case where the testimony presents doubts as to the material facts involved in the issue, the court instructs an erroneous rule of law upon a point pertinent to the issue, the instruction must be presumed to have had its effect, and the judgment will be reversed."

"We apprehend where a different rule has prevailed, such as contended for by the defendant in error, it will be found, upon an analysis of the decisions, they are cases either where the facts have not been controverted, or if contested, the preponderance of evidence was clear, and such as to satisfy the court that a new trial would not probably change the result."

In conclusion we re-affirm that in our opinion both of the instructions of which we have complained are manifestly

erroneous; and that, therefore, this case should be reversed and remanded.

*Anderson, Voller & Kelly,* for appellees.

In a practice extending through many years we have grown quite familiar with the announcement of the court at conclusion of final argument by counsel for plaintiff: "Mr. Clerk, present the papers and instructions to the jury." Whereupon the clerk presents to the jury the declaration, instructions and any other papers introduced in evidence proper to be submitted. If there is in the law of the state of Mississippi anywhere, or in the "rules of practice" anywhere in this state, even a suggestion that the declaration the instrument upon which plaintiff must rely to sustain his cause of action—should not be submitted to the jury we have never even heard it whispered. Under a recent decision of this honorable court, holding it improper to insert in the instructions the amount sued for the jury would as a matter of fact be put to the necessity of referring to the declaration to ascertain the amount. Yet appellants' counsel contend that such a procedure would be improper.

And in this connection here and now we want to quote from the opinion delivered by Judge ANDERSON in case of *Southern Railway Company* v. *Ganong,* 55 So. 355, so frequently referred to in appellants' brief: "However, in the case in hand, we find that the error in these instructions was without prejudice to the appellant, for two reasons: First, in other portions of these instructions the facts necessary for the jury to believe, in order to render a verdict for the appellee, are sufficiently set out; second, it happens in this particular case that the facts on which the cause of action is grounded are so set out in the declaration that the jury could readily refer to it and ascertain what the court meant by the instructions."

If appellants' contention is correct that the declaration under our law and our practice is not to be referred to

the jury when deliberating, what of the suggestion in opinion of Judge ANDERSON, to-wit: "It happens in this particular case that the facts on which the cause of action is grounded are so set out in the declaration that the jury could readily refer to it and ascertain what the court meant by the instructions.

We most respectfully submit this opinion of Judge ANDERSON's for the consideration of the court in asking an affirmance of this case. Doesn't it answer, in entirety, the contentions of appellant as set out in brief?

Appellants' counsel in brief, "assumes the declaration in this case was never read," etc. We state, as a matter of fact, that the declaration was read; that appellants' counsel had ample time, in his opening and closing arguments to the jury, to thoroughly explain the "material allegations" contained in the declaration filed by appellants' counsel in this cause; that the jury could not well be misled as to what the material allegations of the declaration were or by the two brief instructions given defendants. If any ambiguity there was in defendants' instructions, surely it was cured by the very complete and lucid instructions given in behalf of plaintiff.

In *Drake* v. *Surget,* 39 Miss. 458, see pages 488-489, opinion by Judge HARRIS; the court said: "As the plaintiff is bound to declare on a special agreement where there is such, he ought to prove the contract as stated in his declaration expressly as laid or he shall be nonsuited." 2 Tucker's Com. 148-9, and numerous authorities cited.

And again same opinion, page 489: "Thus also in actions upon contract, if any part of the contract proved, should vary materially from that which is stated in the pleadings, it will be fatal; for a contract is an entire thing, and indivisible." . . . "The entire consideration must be stated, and the entire act to be done, in virtue of such consideration, together with the time, manner, and circumstances; and with all the parts of the proposition, as thus stated, the proof must agree." 1 Greenleaf Ev. 89, 90, 91, secs. 66, 67, 68."

In other words, the plaintiff must prove every material allegation of his declaration which, in the instant case, must be considered the "contract" he alleged he had with defendants—no written contract being claimed.

SMITH, C. J., delivered the opinion of the court.

The judgment of the court below herein was affirmed at a former day, and counsel for the appellant suggests that we erred in so doing. The appellant sued the appellees for commissions claimed to be due him by the appellees under a contract by which the appellees agreed to pay him a commission of five per cent. in event he should sell certain real property for him for the sum of four thousand five hundred dollars.

The evidence for the appellant, in the language of the brief of his counsel, is to the effect:

"That he was standing across the street in front of the property where Eugene Shelton and Sallie Morgan lived; that Sallie Morgan called him, inquiring if he sold property; that he was a rental agent, and that she said she would like for him to sell her property for her; that she described the property to him, size, etc.; that she told him her price was four thousand five hundred dollars; that he told her he would charge five per cent. commission for the sale, if a sale was made; that she agreed to this; that he asked her if she would take less; that she said she might, but that he should take it up with her."

The appellee Sallie Morgan, on whose testimony the defense of the appellees rests, testified as follows:

"The defendant, Sallie Morgan, colored, testified that she had lived in Vicksburg between thirty-five and thirty-seven years. That she knew Mr. Smith; that she saw him daily passing the streets. That in last June she did not know Mr. J. R. Smith. That he faces her, and says, 'You have this property for sale? What are you asking for it?' I said, 'Mr. Smith has the property' (meaning Mr. W. F. Smith, another real estate agent). He said, 'He is offering

it for four thousand dollars,' and that he had a party who would like to get it. That she did not say any more to him. That before Mr. W. P. Smith's time was out Mr. J. R. Smith came across the street to collect some rent. That he saw me sitting on the front porch. That he came across the street to me, and says, 'Has Mr. Smith got a signed up contract with you for that property?' I said, 'Yes.' He said, 'After his time is out I think I have a party who will buy it.' I said 'Yes.' That she did not say any more to him about the place. That she said to herself that 'after Mr. Smith's time is out I will take the place off the market.' That she did not see appellant, J. R. Smith, any more until the 30th of November, 1919. That she did not lay her eyes on him until Sunday, November 30th. That she say him passing, but not to talk to him. That one day Mr. Smith, the appellant, came out there. That she thought he was the other Mr. Smith. That he had come out about selling the place. That he said that he would bring a man out to look at the house. That she did not have any idea that it was J. R. Smith, the appellant, until he came to her door on Sunday. That he said, 'I brought the man to look at the house.' That she said that she did not know where he got his authority. That she did not know what caused him to come. That she was almost crying. That her husband had not been dead long. That she said, 'Come in.' That he came in. That they went around and through the house and in the yard and all around, and that when they got ready to leave Mr. Smith asked her something about if she would take less for the house. That she said, 'I have decided not to sell the place.' That she told him that this other Mr. Smith had an option on it already. That she said to Mr. Arcaro when he first came to the door that 'she had decided not to sell.' That she did not know who sent him here, and what caused him to come here. That she was worried and did not give him a thought about asking him. That she ought to have asked him who sent him there. That the place was not offered for sale. That she did not know from what source he had come. That she did not

ask him any questions. That on Monday she found out why he came there. That on Monday morning he came back to the store. That he (Mr. Smith, the appellant) said that Mr. Arcaro had offered everything. That she thereupon told him that she did not want to sell the place. That he had not been gone over ten minutes when he came back and told her the place was sold. That she told him that they did not want to sell the place, and that he repeated to her that it was sold. That he (Mr. Smith) said give him the deeds and let him have them written up, and that she told him that she did not have but a life interest in the property. That it went to Eugene, and that she could not sell without his consent."

There was a verdict and judgment for the appellees.

Three rulings of the court are assigned for error by counsel for the appellant, but only two of which are urged in their brief. These two assignments bring into review the granting by the court below of the following instructions given to the jury at the request of the appellees:

"The court instructs the jury that, before plaintiff is entitled to recover in this case, he must prove by a preponderance of the evidence every material allegation of his declaration, and must prove by a preponderance of the evidence that defendant employed him to sell their said property; otherwise the jury must find for the defendants."

"The court instructs the jury that, unless they believe from the evidence that Sallie Morgan and Eugene Shelton employed the plaintiff to sell their property on Clay street, and that they fully understood that they had employed him to sell said property, then the jury should find for the defendants."

The objection to the first of these instructions is that it required appellant to prove "every material allegation of his declaration." The objection to the second question is that the jury is required thereby before returning a verdict for the appellant to believe not only that the appellees employed him to sell their property, but also "that they (the

appellees) fully understood that they had employed him to sell their property." We will assume for the sake of the argument that the instructions are erroneous in these particulars. Nevertheless, on the evidence, the errors were harmless, and do not justify a reversal of the judgment of the court below.

As set forth in the brief of counsel for the appellant:

"All of the facts in this case are uncontroverted with the exception of the single and sole question as to whether appellees had employed appellant to sell their property."

And this question was clearly and succinctly given to the jury by the appellant's first instruction and by the first clause of the appellees' instruction. *Southern Railway* v. *Ganong,* 99 Miss. 540, 55 So. 355. There was no contention on the part of either the appellant or the appellees that either misunderstood the language which the other used in the discussions between them on which this case is predicated. The contention of the appellees, with which the jury agree, was simply that neither they nor the appellant used the language on which the appellant's claim is based.

In order for an erroneous instruction to require the reversal of a judgment it must affirmatively appear from the record that the complaining party was prejudiced thereby, or, in the language of this court's rule No. 11 (101 Miss. 906, 59 So. ix), it must affirmatively appear from the whole record that such judgment has resulted in a miscarriage of justice. *Jones* v. *State,* 104 Miss. 871, 61 So. 979, L. R. A. 1918B, 388.

*Suggestion of error overruled.*